AO 243 (Rev. 01/15)

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District    SOUTHERN DISTRICT OF FLORIDA |
|---|---|

| Name *(under which you were convicted):*<br>PEDRO ANTONIO ALARCON | Docket or Case No.:<br>9:15-CR-80184-DMM |
|---|---|

| Place of Confinement:<br>FCI MIAMI | Prisoner No.:<br>08683-104 |
|---|---|

| UNITED STATES OF AMERICA | V. | Movant *(include name under which convicted)*<br>PEDRO ALARCON |
|---|---|---|

FILED BY ____ c.o.s ____ D.C.

JAN 0 2 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

MOTION

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF FLORIDA
    WEST PALM BEACH, FLORIDA

    (b) Criminal docket or case number (if you know):  9:15-CR-80184-DMM

2.  (a) Date of the judgment of conviction (if you know):  01/17/2018

    (b) Date of sentencing:  01/03/2018

3.  Length of sentence:  240 MONTHS

4.  Nature of crime (all counts):

    CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE CONTROLLED
    SUBSTANCES

    **Title 21, United States Code, Sections 841 (a)(1) and 846**

5.  (a) What was your plea? (Check one)

    (1) Not guilty ☐        (2) Guilty ☒        (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
    what did you plead guilty to and what did you plead not guilty to?

    I plead guilty to conspiracy to possess with intent to distribute
    controlled substances. All other charges were dismissed as part
    of the plea agreement.

6.  If you went to trial, what kind of trial did you have? (Check one)        Jury ☐        Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?        Yes ☒        No ☐

8.  Did you appeal from the judgment of conviction?        Yes ☐        No ☒

-1-

AO 243 (Rev. 01/15)

9.   If you did appeal, answer the following:

    (a) Name of court: _____ N/A _____

    (b) Docket or case number (if you know): _____ N/A _____

    (c) Result: _____ N/A _____

    (d) Date of result (if you know): _____ N/A _____

    (e) Citation to the case (if you know): _____ N/A _____

    (f) Grounds raised:

                           N/A

    (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes [  ]   No [X]

       If "Yes," answer the following:

       (1) Docket or case number (if you know): _____

       (2) Result: _____

       (3) Date of result (if you know): _____

       (4) Citation to the case (if you know): _____

       (5) Grounds raised:

10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes [  ]   No [X]

11.   If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _____

       (2) Docket or case number (if you know): _____

       (3) Date of filing (if you know): _____

      (4) Nature of the proceeding: _____

      (5) Grounds raised: _____

AO 243 (Rev. 01/15)

**12. GROUND ONE:** Ineffective assistance of counsel in failing to object to judicial interference in the plea deal process.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Counsel refused to object to the Court's interference in the plea deal process. Alarcon plead guilty under a judicial threat of an immediate trial if he refused a plea deal. There can be no doubt that Alarcon was coerced into signing a deal. His counsel wasn't prepared to go to trial and admitted so to Alarcon. The Court violated Fed. Rule of Crim. Proc. 11 by involving itself in the plea deal process and weaponizing ill prepared counsel as a means to coerce Alarcon's plea.
[See memorandum of law for all grounds herein]

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes [ ] No [X]

(2) If you did not raise this issue in your direct appeal, explain why:
Counsel informed me I was unable to appeal any issues because my appellate rights were waived as part of the plea agreement.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes [ ] No [X]

(2) If you answer to Question (c)(1) is "Yes," state:
Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?
Yes [ ] No [X]

(4) Did you appeal from the denial of your motion, petition, or application?
Yes [ ] No [X]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes [ ] No [ ]

-3-

AO 243 (Rev. 01/15)

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):    N/A

Date of the court's decision:    N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Counsel informed me I was unable to appeal any issues because my appellate rights were waived as part of the plea agreement.

**GROUND TWO:** Ineffective assistance of counsel by allowing prosecutor's involvement in attorney-client relations and ignoring prosecutor's threats to coerce Alarcon's plea.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
In October of 2016, at Alarcon's request, a Nelson hearing was conducted by the Court. AUSA, Mark Dispoto, and the special agent in charge of Alarcon's case, remained present throughout what was supposed to be an ex parte hearing to discuss Alarcon's concern of his counsel's preparedness and aspects of Alarcon's confidential pre-trial defense strategy. At counsel's urging, Alarcon discussed filing motions to suppress certain evidence as not relevant to Alarcon and prejudicial in nature. At the same hearing, the Government threatened Alarcon with an §851 enhancement if he filed motions, to which the Court asked Alarcon if he was willing to risk a life sentence. The Court endorsed the Government's threat to punish Alarcon for exercising his due process rights. The Court then stated to Alarcon that he would be held accountable for his answer and subsequent actions. Not only was AUSA Dispoto a participant in Alarcon's hearing, but he interfered in attorney-client relations. At no time did Alarcon's counsel object to or assert attorney-client privilege.

(b) Direct Appeal of Ground Two:

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2)   If you did not raise this issue in your direct appeal, explain why:

Counsel informed me I was unable to appeal any issues because my appellate rights were waived as part of the plea agreement.

(c) Post-Conviction Proceedings:

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

AO 243 (Rev. 01/15)

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:                                N/A

Name and location of the court where the motion or petition was filed:

                                                           N/A

Docket or case number (if you know):        N/A

Date of the court's decision:                              N/A

Result (attach a copy of the court's opinion or order, if available):

                                                           N/A

(3)   Did you receive a hearing on your motion, petition, or application?

      Yes ☐        No ☒

(4)   Did you appeal from the denial of your motion, petition, or application?

      Yes ☐        No ☒

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐        No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

                                                           N/A

Docket or case number (if you know):        N/A

Date of the court's decision:                              N/A

Result (attach a copy of the court's opinion or order, if available):

                                                           N/A

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

      Counsel informed me I was unable to appeal any issues because
      my appellate rights were waived as part of the plea agreement.


**GROUND THREE:**   Ineffective assistance of counsel in failing to challenge
the contents of the factual proffer and limit Alarcon's sentencing
exposure through unchallenged and false statements.

(a) Supporting facts (Do not argue or cite law.):

      Alarcon alerted counsel to numerous falsehoods material to sentencing calculation,
      counsel informed Alarcon that it didn't matter. Alarcon's attorney informed him
      the Government wouldn't amend anything and that Alarcon should just agree
      because the issues made no difference. The "factual proffer" contains 12
      numbered items, which counsel failed to challenge or address. Several of which
      have significant bearing on sentencing enhancements and Alarcon's exposure to
      mandatory minimum sentences.                -5-             (Continued on Page 6 )

1) Paragraph referenced as #1 claimed Alarcon sold heroin and crack-cocaine in 2014 and 2015 and obtained kilogram quantities of heroin from codefendant Steven Herrera's supplier in Atlanta. Alarcon addressed these issues with counsel as follows:

A) It was simply false and no evidence showed Alarcon had pooled his money and/ or resources with any of his codefendants or indeed made any purchase of drugs.

B) Contradictory statements were provided by self-interested codefendants, Rogelio Rosales and Rafael Tineo. Rosales did not state Alarcon worked for him or anyone else involved in the conspiracy, however, Tineo stated Alarcon had worked for Rosales.

C) Rosales stated in his proffer that he initially purchased drugs from Herrera via Pagan and subsequently through Herrera directly.

D) There are no recorded conversations that showed Alarcon and Herrera dealt with each other in any type of criminal activity. The only incidents in which both Alarcon and Herrera were involved were two traffic stops in which money was confiscated, however, Alarcon's codefendants claimed ownership of the money.

E) The information of the indictment charged Alarcon with conspiracy and possession to distribute controlled substances including heroin, crack, and cocaine. However, the proffer does not mention the sale or purchase of cocaine, and there is no evidence supporting the sale of crack.

2) Paragraphs referenced as #2 and #3 claimed Alarcon participated in the conspiracy by transporting heroin and money from Georgia to Florida. On a trip back to Florida, Alarcon and his codefendants were pulled over, $31,000 dollars were confiscated. Alarcon addressed these issues with counsel as follows:

A) The Government's statements are unsupported and contradictory. The Government claims Alarcon and his codefendants purchased a kilo of heroin, but then contradict themselves by saying they purchased a ½ kilo of heroin and added a ½ kilo of a cutting agent.

B) The Government claimed that Alarcon conspired with his codefendants to purchase heroin and initially states that only Pagan, Herrera, and Rosales would split the heroin amongst themselves. Subsequently, the Government then contradicts itself by stating that the heroin was divided amongst Alarcon and his codefendants. Alarcon informed counsel he did not purchase or share drugs and indeed there was no evidence or even supporting statements, counsel specifically said it was irrelevant.

C) No drugs were ever confiscated pursuant to this incident.

3) In paragraph referenced as #4, to support the Government's claims in its proffer of possession and distribution of drugs, the Government cited Alarcon's arrest by the Palm Beach County Sheriff's Department in November 2014. However, this case was set for trial and Alarcon disputed his knowledge of a firearm and drugs. Allegations of DNA evidence were disputable as well. The case never went to trial and the accusations were used as facts.

4) In paragraph referenced as #5, the Government claimed Rosales and Herrera acquired a kilogram of heroin in Atlanta in November or December of 2014 and that Rosales returned to Palm Beach County to divide the portions with Alarcon at Pagan's residence. However, Alarcon pointed to several issues and had addressed them with counsel as follows:

A) Alarcon never attended any such meeting; indeed there is no evidence corroborating the Government's allegations and no specific date to point to. Counsel failed to investigate by seeking exculpatory evidence that exonerated Alarcon. GPS location from Alarcon's phone and statements from witnesses who lived with Alarcon at the time.

5) In paragraphs numbered #6 and #7, the Government claimed Alarcon had traveled with his codefendants to Atlanta to acquire another kilogram of heroin in February 2015. While driving through Lowndes County, Georgia, Pagan was arrested for possession of marijuana and more than $50,000 dollars were confiscated. Alarcon pointed to several issues he addressed with counsel as

A) The only reference to sharing drugs and pooling money is to that of Herrera, Rosales, and Pagan, and a fourth individual named "Danny". Alarcon's mere presence as a passenger on an ill fated journey was not proof of his involvement.

B) Danny is mentioned as the mule and discovery did not include any information on this individual necessitating a Brady claim.

C) Rosales' initial proffer claims he was not present for the trip, but the subsequent plea proffer states Rosales did make the trip.

D) Half of the money confiscated from Pagan pursuant to the February traffic stop was returned to him insinuating the money was not to illicit criminal activity.

E) No drugs tied to the conspiracy were recovered pursuant to the allegations.

6) In paragraph referenced as #8, claims were made that Alarcon answered someone else's phone and delivered drugs to an informant. The photographic and video evidence provided didn't show Alarcon, but again, counsel said it was irrelevant.

7) In paragraph referenced as #9, the Government claims a phone call discussing a rental payment for a commercial business was a nefarious transaction to pay a third party to transport drugs. However, discovery contains evidence of receipts for rental payments pursuant to the phone call.

8) In paragraph referenced as #10, the Government details a phone conversation attributed to Alarcon, which in fact, wasn't Alarcon or even on Alarcon's phone.

9) In paragraph referenced as #11, the Government stated Alarcon and Pagan were arrested at Pagan's residence on October 27, 2015. The Government claimed Alarcon lived with Pagan and that various drugs and firearms were found at the residence. However, Alarcon pointed to several issues and addressed them with counsel as follows:

A) Alarcon was not present at Pagan's residence when Pagan was arrested because he did not live there. Mail establishing Alarcon's residence elsewhere was in discovery.

B) Alarcon went to Pagan's residence because the DEA texted Alarcon from Pagan's phone as stated in the DEA-6 report. Alarcon was arrested on Pagan's street, not his residence.

C) Alarcon had no knowledge of any drugs or firearms in Pagan's home. Alarcon advised counsel Pagan was willing to testify and make a sworn statement that Alarcon did not live there and that the drugs and weapons did not belong to Alarcon.

10) In paragraph referenced as #12, the Government claimed Alarcon conspired with his codefendants to distribute more than 3 kilos of heroin, but less than 10 kilos. However, Alarcon pointed to several issues and addressed them with counsel as follows:

A) There was no such amount of drugs. 3-10 kilos of heroin can generate profits in the hundreds of thousands, if not millions, yet there is no evidence of this pertaining to Alarcon. In fact, Alarcon struggled financially.

B) The Government's proffer repeatedly stated Pagan, Herrera, and Rosales pooled their money and resources to further the conspiracy and would distribute the drugs amongst themselves without reference to Alarcon. Rosales' proffer also does not corroborate the Government's accusations of Alarcon's participation.

C) Only about 600 grams were recovered throughout the entire investigation and none of it came from Alarcon. Alarcon was sentenced with unproven and speculative conspiratorial quantity rather than the individual quantity in contrast to his codefendants, despite the falsehoods within the proffer.

11) The proffer was utilized to lay a foundation of charges against Alarcon, which not only contained numerous falsehoods, but relied on Alarcon's

AO 243 (Rev. 01/15)

mere presence to tar him with the same brush as his codefendants.
       Counsel claimed the Government wouldn't amend anything in the proffer
and when the Court made clear the jury was ready despite counsel's
unpreparedness, Alarcon was forced to accept the plea and proffer.

---

**(b) Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐    No ☒

    (2) If you did not raise this issue in your direct appeal, explain why:

        Counsel informed me I was unable to appeal any issues because
        my appellate rights were waived as part of the plea agreement.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐    No ☒

    (2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____ N/A _____

Name and location of the court where the motion or petition was filed:

_____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available):

_____ N/A _____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐    No ☒

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐    No ☒

    (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐    No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____ N/A _____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available):

_____ N/A _____

AO 243 (Rev. 01/15)

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Counsel informed me I was unable to appeal any issues because my appellate rights were waived as part of the plea agreement.

GROUND FOUR: Ineffective assistance of counsel during pre-trial. CJA attorney, Garland, and private attorney, Trese, failed to research, investigate, and present a defense attacking the sufficiency of the evidence to support the indictment.

(a) Supporting facts (Do not argue or cite law.):
Both attorneys failed to challenge the indictment for sufficiency to refute the conspiracy offense or any joint undertaking of any criminal activity. As examples, Alarcon claims four defenses that counsel could have argued, which disprove Alarcon's culpability and involvement in the furtherance of the conspiracy: 1) The Guidelines Manual Appendix C Amendment 439 (2016 Edition) subsection (c)(6) separates and insulates one party from another. 2) The Guidelines Manual Appendix C Amendment 439 (2016 Edition) subsection (c)(7) shows a defendant can only be held accountable for the individual quantity he distributed, not the larger quantities attributed to the conspiracy. 3) A buyer/ seller defense, in which a defendant was merely buying a specific quantity from a codefendant that was much less than the quantity alleged in the conspiracy.
    4) Codefendant, Wilfredo Pagan, offered Alarcon an affidavit exonerating Alarcon from any involvement in a conspiracy. Counsel refused to investigate and obtain a sworn affidavit from Pagan or even contact Pagan's attorney.
    All four arguments refute and contradict the Government's allegations. Counsel's failure to present and argue any one of these viable defenses exposed Alarcon to a harsher mandatory minimum sentence.
    Counsel's failure to present a defense and exculpatory evidence severely prejudiced Alarcon not only as to guilt or innocence, but sentencing exposure. Counsel's failure had the effect of shepherding Alarcon into signing a false proffer and accepting a bad plea deal.
    Counsel failed to argue the following issues pertinent to count 1 of the indictment, conspiracy to distribute controlled substances in violation of §841 and §846:
    A) Counsel failed to challenge the drug quantity of heroin alleged in the indictment which triggered a mandatory minimum sentence of 10 years. Counsel failed to argue the lack of evidence and the lack of any proof of an overt act attributable to Alarcon.
    B) Counsel failed to challenge the drug quantity of crack-cocaine base alleged in the indictment which triggered a mandatory minimum sentence of 5 years. Counsel failed to argue the lack of evidence and the lack of proof of an overt act attributable to Alarcon.
    C) Counsel failed to challenge the lack of a specific quantity attributed to the charge of conspiracy to distribute cocaine, as well as, the lack of evidence and proof of an overt act attributable to Alarcon.
    Counsel's failure to challenge and argue the validity of these charges and drug quantities exposed Alarcon to mandatory minimums that greatly enhanced his sentencing exposure. Counsel's failure to point out deficiencies in the indictment and information allowed the Government to charge Alarcon by an indictment that was flawed from the beginning.

**Ground Five:** Ineffective assistance of counsel during pre-trial hearings; COA attorney, Garland, failed to sever Alarcon's case from his codefendants.

(a) Supporting facts (Do not argue or cite law.):

Counsel's failure to appeal Alarcon's motion for severance was deficient performance. Alarcon was forced to accept a trial with codefendants who the Government linked to multiple crimes, with substantial quantities of drugs and money, none of which bore any relation to Alarcon's world. The prejudicial effect of the conduct of these codefendants would have denied Alarcon a defense that was antagonistic to his codefendants, introduced inculpatory evidence that was not pertinent to Alarcon, inhibited one of the codefendants from providing exculpatory evidence in favor of Alarcon. The denial of a separate trial created a potential cumulative spill over effect in which it would not have been possible for jurors to distinguish Alarcon in a joint trial.

**Ground Six:** Ineffective assistance of counsel during PSI investigation report and subsequent sentencing hearing. Private attorney, Trese, failed to attend PSI investigation interview, file objections, and subsequently object and argue substantial points during sentencing, which exposed Alarcon to a greater sentence.

(a) Supporting facts (Do not argue or cite law.):

Counsel's failure to attend the PSI interview prejudiced Alarcon. The probation officer said Judge Hurley had required Alarcon to make a statement accepting responsibility. Without counsel, Alarcon accepted responsibility for crimes he didn't commit because he was told he had to. Alarcon was coerced into making a generalized statement which was utilized to enhance his sentence through relevant conduct. When Alarcon received his PSI report, he raised objections to numerous issues with counsel. Alarcon told counsel to object to the following:

A) 'Facts' of the investigation derived from the Government's factual proffer, many of which were simply false.

B) Unsubstantiated relevant conduct in which Alarcon is accused of being responsible for 3-10 kilos of heroin, exposing Alarcon to harsh sentencing criteria.

C) Lack of mitigating role reductions even though Alarcon met the criteria to merit such a downward departure.

D) Argue the two level gun enhancement even though all firearm related charges were dismissed and there was no actual possession.

E) Dispute and investigate criminal history points pertinent to misdemeanor marijuana possession.

Counsel refused to file objections despite acknowledging numerous falsehoods. But for counsel's ineffective assistance, by not challenging baseless claims, Alarcon's sentencing exposure was amplified, see Ground #3 in reference to the dispute of the factual proffer.

During the sentencing hearing, counsel failed to make objections and arguments, examples of which as follows:

A) To argue the disparity between the sentencing guidelines and the harshness of the sentence being imposed on Alarcon due to the imposition of a mandatory minimum sentence and §851 enhancement.

B) To argue the lack of evidence to justify the relevant conduct Alarcon was accused of.

C) To argue the validity and appropriateness of the vague and broad requirements that trigger an §851 enhancement.

D) To argue the lack of actual possession, fingerprints, and the fact that all firearm related charges were dropped and no other supporting facts existed to justify a two level gun enhancement. Counsel failed to make a rebuttal to the Government's argument.

Counsel told Alarcon he did not want to upset the judge or the prosecutor by raising these issues, the significance of which can not be overstated.

plea negotiations. CJA attorney, Garland, failed to object to and/ or research §851 notice. Private attorney, Trese, failed to argue §851 enhancement.

(a) Supporting facts (Do not argue or cite law.):

Garland failed to challenge Alarcon's §851 notice, which contained a single charge of sale and delivery of one ounce of marijuana, doubling Alarcon's mandatory minimum from 10 years to 20 years. Alarcon wanted counsel to investigate his state charge and attack its validity due to several issues that would make it an illegal sentence. However, counsel refused to investigate the matter.

Trese, failed to argue the §851 enhancement during plea negotiations with the Government and at sentencing. Trese's and Garland's failure to investigate and challenge not only the vagueness of the §851 enhancement, but its validity in Alarcon's case and not least its use to curtail Alarcon in the pursuit of his due process rights.

---

**Ground Eight:** Ineffective assistance of counsel during pre-trial hearing. CJA attorney, Garland, failed to appropriately argue and subsequently challenge by interlocutory appeal the Court's decisions on Alarcon's motions to suppress.

(a) Supporting facts (Do not argue or cite law.):

Alarcon asked counsel to appeal the Court's denial orders on the motions to suppress dated, April 3rd, 4th, 5th, and 6th of 2017, representing docket entries 284, 287, 288, and 290. Alarcon pointed counsel to the following material issues for the basis of the appeal:

1) Pertinent to the motion to suppress on the October 2014 traffic stop. Alarcon was stopped in one jurisdiction after law enforcement from another jurisdiction contacted each other, targeting Alarcon. Counsel failed to illustrate the violation of Alarcon's rights which led to the seizure of cash, which smeared Alarcon because of his proximity to it. Counsel failed to explain the unsupported drug sniff at the first stop, the second false positive at the second stop, or that cash confiscated was punitive without a nexus of a crime.

2) Pertinent to the motion to suppress hearing on the February 2015 traffic stop. Alarcon was prejudiced by the conduct of passengers in the vehicle. Alarcon was implicated by his presence to a marijuana and cash seizure. Alarcon's presence was used to enhance his involvement. At the hearing, counsel failed to illustrate Alarcon was a passenger. The cash seizure was ultimately utilized to prejudice him. Counsel failed to explain half the cash was returned to its owner, which was not Alarcon. Counsel's failure to file an interlocutory appeal reduced Alarcon's option to seek a trial.

3) Pertinent to the motion to suppress hearing on the storage unit search warrant. Despite the Government's search warrant containing numerous inaccuracies, including even which floor the storage unit was on, Alarcon's attorney refused to challenge the veracity of the warrant by filing a motion for a Franks hearing. The Government affidavit detailed the drugs the Government expected to find based on the K-9 officer's claim of an odor from a storage unit with common ceilings. The search yielded a firearm, which did not belong to Alarcon, did not have fingerprints, or DNA to support it was Alarcon's. However, it was subsequently used to enhance Alarcon at sentencing.

4) Pertinent to the motion to suppress on the wiretap application. Alarcon's motion detailed numerous inaccuracies in the agent's affidavit in support of the warrant when compared to statements and evidence in discovery. At the hearing of the motion, counsel declined to articulate the motion's content or expand on the argument. Counsel was deficient in further failing to seek a Franks hearing to attack the underlying basis for the wiretap warrant, which violated the rules governing the issue of such warrants. By further failing to seek an interlocutory appeal of Alarcon's and Pagan's joint motion, Alarcon's options were destroyed. In effect, hearsay and outright falsehoods became facts in the case. But for counsel's deficient performance, Alarcon was precluded from his trial options due to counsel's failure to file an interlocutory appeal after Alarcon had requested it.

-11-

Ground Nine: Ineffective assistance of counsel in pre-trial. CJA attorney,
Case 9:19-cv-80006-DMM Document 1 Entered on FLSD Docket 01/03/2019 Page 12 of 25
Garland, failed to file motions to suppress regarding several aspects of the
case.

(a) Supporting facts (Do not argue or cite law.):

Counsel failed to file a motion to suppress the November 21, 2014 traffic
stop yielding narcotics and a firearm. Alarcon's attorney knew this was a
questionable search and seizure, violating the law. This stop constituted the
basis for several charges in Alarcon's indictment; one count of possession
with intent to distribute controlled substances, one count of possession of
a firearm by a convicted felon, and one count of possession of a firearm by
a convicted felon in furtherance of a drug trafficking crime (924(c)), which
exposed Alarcon to a consecutive mandatory minimum sentence of 5 years.

A) Failure to file the motion prejudiced Alarcon because it denied
Alarcon the ability to examine and impeach the arresting officer's statements.
The arrest report falsely stated Alarcon gave consent to search the vehicle.
Alarcon requested dash cam video to support his claim and impeach the officer.

If counsel had filed a motion to suppress, the officer's testimony would
have shown the inconsistencies in his statements, which could have been used
to challenge the submission of evidence, which in turn would have lead to the
dismissal of three of Alarcon's charges. Counsel's failure left Alarcon
exposed to a mandatory minimum sentence of 50 years.

B) Counsel also failed to file a motion to suppress the search of the
vehicle during Alarcon's arrest on October 27, 2015, which was the basis for
one count of possession of a firearm by a convicted felon in the superseding
indictment. Failure to file the motion prejudiced Alarcon because he was not
able to challenge the legality of the search. Alarcon's arrest took place in
front of Pagan's residence. The search and seizure warrant that was executed
by the DEA on Pagan's residence did not list Alarcon as a person who was to
be detained and/ or seized at the residence. The warrant stated that the
residence and all the vehicles located on the property were subject to search.
Alarcon did not reside nor was he present when the warrant was executed and
Pagan arrested. Alarcon was arrested approaching the residence at 7:40 AM on
October 27, 2015 on a public road in front of Pagan's residence. The vehicle
was not legally subject to a search based upon the Government's warrant. DEA
agents surrounded Alarcon, pulled him out of the vehicle and subsequently took
him into custody. Alarcon was arrested and did not give consent to search.
No arrest warrant was provided to Alarcon, The DEA-6 reports state that the
vehicle he was arrested in did not belong to him and was returned to the
registered owner. The vehicle was not towed as is procedure, but driven by
federal agents. The firearm was allegedly found in the vehicle's glove
compartment and was not in plain sight. No fingerprints were found on the
firearm.

Counsel's ineffective assistance in failing to file and argue for
suppression was not harmless and left Alarcon exposed to substantial
outlandish claims and greatly diminished Alarcon's preferred option of a
trial.

**Ground Ten:** Ineffective assistance of counsel pre-trial. CJA attorney,
Garland, and private attorney, Trese, failed to file a motion for an
evidentiary hearing to determine drug quantity.

(a) Supporting facts (Do no argue or cite law.):

Both attorneys failed to file a motion for an evidentiary hearing to
refute the Government's allegations that Alarcon was responsible and culpable
for over a kilo of heroin, at least 28 grams of crack-cocaine base, and a
significant amount of cocaine. The Government's proffer and the PSI report
accused Alarcon of being responsible for 3-10 kilos of heroin. These
quantities triggered a mandatory minimum sentence.

Alarcon asked counsel for a hearing to establish quantity, which was based entirely without evidence and contradicting statements in discovery. The Government's "factual proffer" was riddled with inconsistencies as to quantity and culpability as follows:

A) Approximately 600 grams were recovered throughout the entire investigation and none of it came from Alarcon. Alarcon was sentenced with unproven and speculative conspiratorial quantity rather than the individual quantity in contrast to his codefendants.

An evidentiary hearing would have proved quantities were for less, which would have resulted in a substantially lower sentence without such a harsh mandatory minimum.

---

**Ground Eleven:** Ineffective assistance of counsel, pre-trial. CJA attorney, Garland, and private attorney, Trese, failed to investigate and **seek** evidence in support of Alarcon's actual innocence and make any appropriate trial preparations.

(a) Supporting facts (Do not argue or cite law.):

During the course of Alarcon's case, both Garland and subsequently, Trese, failed:

A) To investigate Alarcon's claims of innocence. Alarcon repeatedly asserted his innocence to counsel and had a rebuttal and explanation for every claim made by the Government. Both attorneys failed to look into Alarcon's claims and do any research in support. Both attorneys told Alarcon that even though there was no direct evidence linking him to any crime, that the inferences and circumstantial evidence were sufficient, although Alarcon repeatedly pointed out the inconsistencies in the inferences and assumptions and how many statements were provably false. Alarcon instructed the attorneys to collect exculpatory evidence in the form of a statement from codefendant, Wilfredo Pagan, which would exonerate Alarcon from involvement in the conspiracy. Alarcon pointed to cell phone GPS data to disprove certain allegations of his whereabouts. Alarcon asked counsel to seek a subpoena to reveal the registered name of the user for cell phones falsely attributed to Alarcon. Alarcon asked for expert witness and analysis to refute false claims of telephone conversations attributed to him. Alarcon also asked for DNA evidence to be analyzed and expert testimony to be sought to explain its significance. But for their negligence, Alarcon's innocence would have been proven and Alarcon would not have been forced to involuntarily accept a plea of 20 years for a crime he didn't commit.

B) Counsel's failure to prepare had additional consequences. Had counsel prepared for trial, filed pre-trial motions, and conducted a trial, Alarcon's time line would have changed. This prejudiced Alarcon in forcing him into an unfavorable plea and created a finality to Alarcon's case far sooner than was favorable to Alarcon. Had counsel prepared effectively, conducted a trial, and even lost trial, Alarcon's sentencing would have benefitted under the First Step Act of 2018, which substantially lowered Alarcon's sentencing exposure by making Alarcon ineligible for an §851 enhancement and barring the Government from stacking multiple 924(c) charges as they did in Alarcon's case.

---

(b) Direct Appeal of Grounds Four through Eleven:

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes [    ]     No [X]

(2)  If you did not raise this issue in your direct appeal, explain why:

Counsel informed me I was unable to appeal any issues because my appellate rights were waived as part of the plea deal agreement.

---

-13-

**(c) Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:  N/A

Name and location of the court where the motion or petition was filed:

N/A

Docket or case number (if you know):  N/A

Date of the court's decision:  N/A

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

N/A

Docket or case number (if you know):  N/A

Date of the court's decision:  N/A

Result (attach a copy of the court's opinion or order, if available):

N/A

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Counsel informed me I was unable to appeal any issue because my appellate rights were waived as part of the plea agreement.

13.  Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

I have not previously raised my grounds of ineffective assistance of court-appointed counsel, Jeffrey Garland, or of private counsel, Patrick Trese, because I did not have the opportunity to do so. I was advised by counsel that my appellate rights were waived as part of the plea deal agreement. As such, this is my first opportunity to raise these claims.

14.  Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?    Yes ☐    No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a) At the preliminary hearing:

Jeffrey H. Garland   2500 Rhode Island Avenue, Suite B   Fort Pierce, FL 34947

(b) At the arraignment and plea:

Jeffrey H. Garland   2500 Rhode Island Avenue, Suite B   Fort Pierce, FL 34947

(c) At the change of plea hearing:

Patrick F. Trese   12 SE 7th Street, Suite 703   Ft. Lauderdale, FL 33301

(d) At sentencing:

Patrick F. Trese   12 SE 7th Street, Suite 703   Ft. Lauderdale, FL 33301

(e) On appeal:

N/A

(f) In any post-conviction proceeding:

N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?   Yes [ ]   No [X]

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   Yes [ ]   No [X]

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

N/A

(b) Give the date the other sentence was imposed:   N/A

(c) Give the length of the other sentence:   N/A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes [ ]   No [X]

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

**N/A**

Therefore, movant asks that the Court grant the following relief:

Vacate sentence and plea.

or any other relief to which movant may be entitled.

_____N/A_____

Signature of Attorney (if any)

In compliance with 28 U.S.C. §1746,

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on ___December 26, 2018_____.

(month, date, year)

Executed (signed) on ___December 26, 2018_____ (date)

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

## CERTIFICATE OF SERVICE

I hereby affirm the attached motion was mailed this 26th day of December 2018 to the following party:


AUSA

Mark Dispoto
United States Attorney's Office
500 South Australian Avenue
West Palm Beach, FL 33401


By: _____
    Pedro Alarcon

UNITED STATES DISTRICT COURT

FOR THE ELEVENTH CIRCUIT

SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

                                        Plaintiff,

        v.

PEDRO ALARCON,

                                        Movant.

CASE NO.: 9:15-CR-80184-DMM

MEMORANDUM OF LAW IN SUPPORT OF MOVANT'S MOTION
SANCTIONED UNDER 28 U.S.C. §2255

        Comes now, Pedro Alarcon, as a pro se petitioner incarcerated in a
federal prison, invokes the liberal pleading and construance doctrine
expressed in Estelle v. Gamble, 429 U.S. 97 (1976). See also United States v.
Jordan, 915 F. 2d 622, 624-25 (11th Cir. 1990), Haines v. Kerner, 404 U.S. 519
(1972), and Tannenbaum v. United States, 148 F. 3d 1262, 1263 (11th Cir.
1998). The allegations raised in Alarcon's motion sanctioned under 28 U.S.C.
§2255 must be taken as true and construed in a light most favorable to
Alarcon's position. See Bower v. County of Inyo, 489 U.S. 593, 598 (1989),
Williams v. Russo, 636 Fed. Appx. 527 (11th Cir. 2016).

        Alarcon wanted a trial and spent over a year and a half in pre-trial
detention trying to convince counsel of his innocence. Alarcon was on a slow
moving conveyor belt to a conviction where counsel failed to suppress
inflammatory evidence, seperate Alarcon from his claimed conspirators, and
investigate and prepare Alarcon's defense. See United States v. Lopez, 649 F.
3d 1222, 1234 (11th Cir. 2011), in which the court acknowledged a severance is
appropriate because the defendant is prejudiced in the absence of such a
remedy. Counsel's failure to seek a severance exposed Alarcon to potentially
sensationalized trial rhetoric, denied an opportunity for an antagonistic
defense, preventing codefendants from testifying and providing exculpatory
evidence to exonerate Alarcon, or introduce inculpatory evidence. See also
United States v. Chavez, 584 F. 3d 1354, 1360-61 (11th Cir. 2009).

        Recognizing failures on the part of counsel, Alarcon filed for a Nelson
hearing (D.E. 226). The Court permitted the prosecutor and the special agent

-1-

in charge of the case to partake in Alarcon's hearing where confidential trial strategy was discussed. The prosecutor even went as far as addressing the Court as a witness bestowing the virtues of Alarcon's counsel. Alarcon, an untrained layman, was urged by counsel to share his confidential thoughts and trial strategy. Counsel's failure to protect clearly privileged information was a willful violation of client-attorney privilege. See United States v. Schaltenbrand, 930 F. 2d 1554, 1562 (11th Cir. 1991) and United States v. Bell, 776 F. 2d 965, 971 (11th Cir. 1985).

Alarcon testified in order to proceed to trial with examples of counsel's failures, requiring counsel to file several motions to suppress, as opposed to counsel's preferred strategy of a plea. Alarcon's testimony was interrupted by the prosecutor threatening, if in the event Alarcon filed such a motion, the Government would file a 18 U.S.C. §851 notice seeking enhanced penalties. This had a chilling effect on Alarcon not least because the Court asked Alarcon and indeed made clear the Court would hold Alarcon to his answer.

Alarcon's sentence was enhanced by virtue of a retaliatory threat of a section 851 filing. Alarcon's prior conviction resulted in a probationary sentence. Counsel refused to challenge and investigate this vindictive filing or challenge Alarcon's prior conviction, which exposed Alarcon to a substantially enhanced sentence. Alarcon pointed to the difference in the analytical framework of the INA Act, which does not define numerous types of prior sentences as prior convictions for §851 enhancements. Aside from the retaliatory aspect, see United States v. Castronuovo, 649 Fed. Appx. 904, May 17, 2016 (11th Cir.), where vindictiveness is defined on the principle that a defendant is punished for exercising his constitutional rights, counsel failed to act.

This was a clear indictment of counsel's ineffective assistance. Counsel was not only deficient in failing to object to the prosecutor's and the government agent's presence and interference in the proceedings, but allowed Alarcon to share defense strategy and expose him to an enhanced sentencing exposure by virtue of his testimony. See Strickland v. Washington, 466 U.S. 668, 689-94 104 S. Ct. 2052 80 L. Ed. 2d 674 (1984). Alarcon meets both prongs to demonstrate counsel's deficient performance, which prejudiced Alarcon in his trial options, and ultimately, in his actual sentence.

Alarcon was relentless in pushing counsel to prepare for trial, instructing him to prepare a defense by seeking exculpatory evidence to disprove claims in the Government's proffer and assert a defense for Alarcon's

mere presence at some events, seek actual evidence proving Alarcon wasn't where and when the Government claimed. Counsel's performance was not mere slip shod, but deficient to the point of egregious. Counsel failed in every regard to investigate cell phone GPS location devices, subpoena phone records, or ask for voice analysis of phone calls.

Alarcon begged counsel to challenge the Government's proffer for inaccuracies and outright contradictions. Alarcon as a lay man questioned counsel about the Government claims, which were unsupported by evidence. Alarcon pointed to a total quantity of 600 grams of heroin recovered in the case despite the wild claims of large quantities that never existed. Subsequently, counsel failed to challenge these same quantities in the PSI despite circuit precedent, which makes clear a challenge shifts a burden of proving the disputed quantity to the Government. This requires them to prove amounts by a preponderance of the evidence. See United States v. Rodriguez, 398 F. 3d 1291, 1296 (11th Cir. 2005).

On October 11, 2017, Alarcon and his codefendants attended a hearing for a change of plea. Alarcon's codefendant spoke first. The Court realizing Alarcon's unwillingness to plea informed Alarcon he had a jury ready 'outside' and they could commence trial immediately. Counsel informed Alarcon he was not prepared for trial and his sentencing exposure was 50 years to life. There was no choice and counsel advised Alarcon to simply ignore the false statements in the factual proffer and sign. Counsel failed to raise issue with Court's violation of Fed. R. Crim. Proc. 11 by interfering in the plea deal process. A judge's participation in plea discussions creates a misleading impression of the judge's role in the proceedings. See United States v. Johnson, 89 F. 3d 778, 783 (11th Cir. 1996) and United States v. Tobin, 676 F. 3d 1264, 1304 (11th Cir. 2012). Rule 11 (c)(1) prohibits a district court from participating in plea negotiations. United States v. Pena, 720 F. 3d 561, 570 (5th Cir. 2013). This court has described Rule 11(c)(1)'s prohibition as being a "bright line rule" and creating "an absolute prohibition on all forms of judicial participation in or interference with the plea negotiations process." Id. (first quoting United States v. Rodriguez, 197 F. 3d 156, 158 (5th Cir. 1999); then quoting United States v. Hemphill, 748 F. 3d 666, 672 (5th Cir. 2014) (describing Rule 11(c)(1) as a "blanket prohibition" that "admits of no exceptions"). United States v. Daigle, 63 F. 3d 346, 348 (5th Cir. 1995). "In light of these considerations, we have not hesitated to find a Rule 11 error even when the court's participation is minor and unintentional." United States v. Ayika, 554 F. App'x 302, 305 (5th Cir.

2014)(per curiam).

Alarcon's plea wasn't voluntary. The Court and counsel coerced Alarcon to accept the plea and agree to a proffer, which counsel knew contained numerous falsehoods. Counsel's performance was deficient and as such, Alarcon was denied due process and his acceptance of a plea was made without the assistance of effective representation by counsel. See Bullard v. Warden, Jenkins Corr. Ctr., 610 F. App'x 821, 824 (11th Cir. 2015).

Despite counsel's acknowledgement that Alarcon was signing a proffer and plea that 1) did not contain facts to support Alarcon's role in the criminal activity and 2) contained numerous falsehoods, counsel advised Alarcon to 'just sign'. In fact, Alarcon signed his plea because of counsel's ineffective representation. As such, Alarcon must be free to assert his rights. See United States v. Abarca, 985 F. 2d 1012, 1014 (9th Cir. 1993), a case where leaving open possibility of bringing an ineffective assistance of counsel claim even when a plea deal specifically waived §2255 rights. In Middleton v. United States, 46 F. 3d 1143 (9th Cir. 1995), " We conclude that [appellant] did not waive his right to collaterally attack his sentence with a section 2255 motion grounded in ineffective assistance of counsel and involuntary plea." Alarcon cites counsel's failure to protect him from judicial interference and prosecutorial threats to expose him to a greater sentencing range. Counsel conduct affected the validity of the plea itself. See United States v. Bushert, 997 F. 2d 1343, 1350 n. 17 (11th Cir. 1993), noting defendant is not prevented from a collateral attack by §2255 motion when claiming ineffective assistance of counsel in the plea deal process as in the case subjudice where Alarcon was coerced and improperly threatened to enter into a plea deal. See also United States v. Puentes-Hurtado, 794 F. 3d 1278, 1281, 1285 (11th Cir. 2005).

Counsel failed to present to the Court that mere presence pursuant to circumstantial evidence and inferences is insufficient to show proof of Alarcon's participation in the conspiracy. As such, Alarcon's mere presence subjected him to the same or greater punishment as his codefendants who were clearly culpable of the alleged criminal activity and were active and voluntary participants in the conspiracy. See United States v. Jiminez, 564 F. 3d 1280, 1285 (11th Cir. 2009), noting mere presence is insufficient to establish conspiracy. Counsel also failed to argue for a mitigating role adjustment and instead allowed Alarcon to be exposed to a far harsher sentence than even his codefendants. Seeking a reduction was well within the trial

court's discretion. See United States v. Torres-Hernandez, 843 F. 3d 203, 210 (5th Cir. 2016).

Counsel failed to file motions to suppress a traffic stop, which violated Alarcon's constitutional rights. See Terry v. Ohio, 392 U.S. 1, 20 L. Ed 2d 889, 88 S. Ct. 1868 (1968). Counsel failed to suppress evidence from a storage unit or seek a Franks hearing to examine clear anomalies, including even which floor the unit was on, and address whose property was confiscated. Counsel did file a motion to challenge another traffic stop by police which clearly violated Alarcon's constitutional rights. However, counsel failed to illustrate a law enforcement officer from one jurisdiction set up Alarcon's stop in another jurisdiction. Counsel failed to raise these substantial issues or seek witnesses. The Fourth Amendment, "prohibits state actors from making searches or seizures of the person in the absence of probable cause." United States v. Dunn, 345 F. 3d 1285, 1288 (11th Cir. 2003). See also United States v. Sharpe, 470 U.S. 675, 690, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985). Subsequently, counsel refused to file an interlocutory appeal to challenge the Court's findings.

With such deficient representation, Alarcon was faced with a "Hobson's choice". The effect of counsel's failure to investigate Alarcon's defense made a plea deal his only option. Alarcon has pointed to substantial issues which would have made a trial outcome favorable. See Padilla v. Kentucky, 559 U.S. 356, 372, 1305 S. Ct. 1473, 1483 176 L. Ed. 2d 284 (2010), in which the court acknowledged rejecting a plea bargain would be rational but for counsel's ineffective representation. See also Diveroli v. United States, 803 F. 3d 1258, 1262-63 (11th Cir. 2015).

Alarcon meets the two prong requirement for a showing of ineffective assistance counsel. See Strickland v. Washington, 466 U.S. 668, 689-94 104 S. Ct. 2052 80 L. Ed. 2d 674 (1984), where counsel's performance was not only deficient, but prejudiced Alarcon in his opportunity to proceed to trial and exposed him to harsher sentencing and enhancements.

Respectfully submitted this 26th day of December 2018, by depositing a copy of this motion in the prison mailbox system with pre-paid postage in compliance with 28 U.S.C. §1746.

By: _____
Pedro Alarcon
I.D. 08683-104
Pro Se Incarcerated Petitioner
Federal Correction Institution
P.O. Box 779800
Miami, FL 33177

## CERTIFICATE OF SERVICE

I hereby affirm the attached memorandum was mailed this 26th day of December 2018 to the following party:


AUSA

Mark Dispoto
United States Attorney's Office
500 South Australian Avenue
West Palm Beach, FL 33401


By: _____
Pedro Alarcon

# PRIORITY
# ★ MAIL ★

FROM:

PEDRO ALARCON
I.D. 08683-104
FEDERAL CORRECTIONAL INSTIT
FCI MIAMI
P.O. BOX 779800
MIAMI, FL 33177

- DATE OF DELIVERY SPECIFIED*
- USPS TRACKING™ INCLUDED*
- INSURANCE INCLUDED*
- PICKUP AVAILABLE

* Domestic only

TO:

[08683-104]

Paul G. Rogers Federal Bu
United States Courthouse
Clerk, of the Court
701 Clematis Street
West Palm Beach, FL 33401-

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.

USPS INSPECTED BY

LEGAL MAIL

UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

9014 9645 0058 2386 23

P14F July 2013
D: 12.5 x 9.5

INITIALS

THE ENCLOSED LETTER WAS PROCES
PECIAL MAILING PROCEDURES FO
TO YOU, THE LETTER HAS BEEN NEIT
OR INSPECTED. IF THE WRITER RA
JESTION OR PROBLEM OVER WHIC
CILITY HAS JURISDICTION, YO
TURN THE MATERIAL FOR FURE
ATION OR CLARIFICATION
TES CORRESPOND
NOTHER

VISIT US AT USPS.COM
ORDER FREE SUPPLIES ONLINE

# PRIORITY®
# ★ MAIL ★

## FLAT RATE ENVELOPE
ONE RATE ★ ANY WEIGHT*

7009 2820 0001 7401 8634

PS00001000014

**EP14F July 2013**
**OD: 12.5 x 9.5**