UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80006-CV-MIDDLEBROOKS
(15-80184-CR-MIDDLEBROOKS)[1]
MAGISTRATE JUDGE REID

PEDRO ANTONIO ALARCON,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

This cause is before the Undersigned on Movant's *pro se* Amended Motion to Vacate filed pursuant to 28 U.S.C. § 2255 and Memorandum in Support, attacking his conviction and sentence following a guilty plea, in Case No. 15-80184-CR-MIDDLEBROOKS. [ECF Nos. 8, 9].[2] This matter has been referred to the Undersigned for consideration and report on dispositive matters pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 2].

Upon review of the Amended Motion and the record in this case and Movant's underlying criminal case, the Amended Motion should be **DENIED**.

---

[1] The underlying criminal case was previously assigned to U.S. District Judge Daniel T. K. Hurley.

[2] This Report uses the citation "[ECF No.]" to reference docket entry numbers in the instant case. Citations to "[CR ECF No.]" refer to docket entry numbers in the underlying criminal case. Any references to the presentence investigation report are cited as "[PSI]" within this Report.

## II. Claims[3]

Liberally construing Movant's claims pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant claims:

1. Counsel was ineffective for failing to object to judicial interference during plea negotiations;

2. Counsel was ineffective for permitting the prosecutor to coerce Movant's guilty plea;

3. Counsel was ineffective for failing to challenge the content of the factual proffer resulting in a more onerous sentence;

4. Counsel was ineffective for (a) not relying on certain provisions with the Guidelines during sentencing, (b) not raising a "buyer/seller defense" at sentencing, and (c) not challenging the sufficiency of the evidence used to support the drug quantity detailed in the superseding indictment;

5. Counsel was ineffective for failing to sever Movant's case from his codefendants;

6. Counsel was ineffective for (a) not challenging the drug quantity within the factual proffer; (b) not being present during the interview with U.S. Probation which led to Movant accepting responsibility for his actions; (c) not raising certain arguments during sentencing to lower the applicable guidelines range.

7. Counsel was ineffective for not challenging the validity of the § 851 enhancement prior to sentencing;

8. Counsel was ineffective for (a) not filing an adequate motion to suppress and (b) not filing an interlocutory appeal on the deal of the motions to suppress that were filed;

9. Counsel was ineffective for not filing additional motions to suppress;

---

[3] The Undersigned is mindful of the *Clisby* rule that requires district courts to address and resolve all claims raised in habeas proceedings, regardless of whether relief is granted or denied. *See Clisby v. Jones*, 960 F.2d 925, 935-36 (11th Cir. 1992) (involving a 28 U.S.C. § 2254 petition filed by a state prisoner); *see also Rhode v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009) (holding that *Clisby* applies to § 2255 proceedings). In accordance with that principle, all claims and discrete subclaims for relief have been addressed within this Report. To the extent Movant might later allege that a claim was not addressed, the claim was too vague and conclusory to establish *Strickland* prejudice.

10. Counsel was ineffective for failing to request an evidentiary hearing to challenge the drug quantity attributable to Movant;

11. Counsel was ineffective for failing to investigate or seek evidence to establish Movant's innocence, such as (a) GPS data of Movant's cell phone, (b) an affidavit from a codefendant, and (c) DNA evidence.

[ECF Nos. 8, 9].

### III. Pertinent Factual and Procedural History

A. <u>Prior to Movant's Change of Plea Hearing</u>

In a 16-count indictment charging Movant and eight codefendants, Movant was charged with: (1) conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (Count 1); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)-(b)(1) (Count 2); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3); knowingly being a convicted felon possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Count 4); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)-(b)(1) (Count 10); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 11); and being a convicted felon possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Count 12). [CR ECF No. 3].

By superseding indictment, on March 17, 2016, Movant was charged with the previously mentioned charges and two additional counts of knowingly being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g) (Counts 19 and 20). [CR ECF No. 147]. Movant's trial was scheduled for October 11, 2016. [CR ECF No. 195].

About two weeks before the scheduled trial date, Movant filed a letter requesting a "*Nelson* hearing"[4] claiming his attorney was ineffective and, therefore, should be discharged. [CR ECF No. 211]. The Court denied the motion. [CR ECF No. 221]. The Court also rescheduled the trial for January 3, 2017. [CR ECF No. 236].

On the scheduled trial date, Movant's Counsel filed the first of four motions to suppress evidence. The first motion sought to suppress evidence seized from a 2014 motor vehicle stop in Lowndes County, Georgia. [CR ECF No. 245]. The second and third motions, filed on January 9, 2017, sought to suppress evidence seized from a 2014 motor vehicle stop in Alachua County, Florida and from a storage facility in Palm Beach County, Florida, respectively. [CR ECF Nos. 247, 248]. The last motion, filed on January 19, 2017, sought to suppress evidence seized from a different motor vehicle stop in Lowndes County, Georgia that transpired in 2015. [CR ECF No. 249].

On January 25, 2017, the Court rescheduled trial for March 6, 2017 [CR ECF No. 251]. The trial was re-scheduled again for April 3, 2017. [CR ECF No. 274].

While the motions to suppress were pending, the Government filed a Notice of Intent to Rely on Prior Convictions for Enhanced Sentence pursuant to 21 U.S.C. § 851. [CR ECF No. 279]. The Government stated it would move at sentencing to enhance the mandatory minimum sentence on the conspiracy charge against Movant from 10 to 20 years' imprisonment. [*Id.*].

The Court, after holding an evidentiary hearing on the motions to suppress, denied all motions. [CR ECF Nos. 284, 287, 288, 290]. Trial was re-scheduled for October 10, 2017. [CR ECF No. 292].

---

[4] *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

In July 2017, Movant's initial attorney, Jeffrey Garland, withdrew, and Patrick Trese was substituted as counsel of record. [CR ECF Nos. 309, 310, 311, 312]. Three months later, Movant entered a written Plea Agreement. [CR ECF Nos. 343, 346].

B. The Statutory Maximum and Mandatory Minimum Sentences

According to the penalty sheet attached to the superseding indictment, the statutory maximum sentences authorized by law were (1) life imprisonment as to Counts 1, 3, and 10; (2) 20 years' imprisonment as to Counts 2 and 9, (3) and life imprisonment as to Counts 4, 11, 19, and 20. [CR ECF No. 147]. However, two charges required mandatory minimum sentences if convicted on those counts. Count 3 had a mandatory minimum sentence of 5 years' imprisonment to be served consecutive to any other sentence imposed. [*Id.*]. Count 10, likewise, required a mandatory minimum sentence of 25 years' imprisonment to be served consecutive to any other sentence imposed. [*Id.*].

C. The Change of Plea Hearing and Judgment

According to the written Plea Agreement, in exchange for Movant's guilty plea to Count 1 of the superseding indictment, charging him with conspiracy to distribute controlled substances, the Government would dismiss all other Counts against him, Counts 2, 3, 4, 9, 10, 11, 19, and 20. [CR ECF No. 346 at 1]. By signing the written Plea Agreement, Movant confirmed his understanding that he would be sentenced "to a term of imprisonment of not less than 20 years and not more than life imprisonment, followed by a term of supervised release of at least five years up to life." [*Id.* at 2]. Movant further agreed to the Government's recommendation of a sentence of 240 months' imprisonment, the mandatory minimum sentence. [*Id.* at 3].

During his change of plea hearing, Movant affirmed that he understood that "nobody wants [him] to plead guilty unless…[he] really did what the Government is claiming…[and he] reached

this conclusion having talked to [his Counsel] that this is the right thing for [him] to do[.]" [ECF No. 16-2 at 19]. Movant confirmed that it was his signature on the plea agreement and that he and his attorney spent "plenty of time" discussing whether it was in his best interest. [*Id.* at 19-20]. Movant also agreed that he had discussed any available defenses that could have been raised at trial and affirmed that he reviewed every paragraph of the plea agreement with his attorney. [*Id.*].

Movant confirmed that he understood that "the sentence in this case could run anywhere from 20 years in federal prison up to life in prison" because his guilty plea conceded that a mandatory minimum sentence applied. [*Id.* at 36, 38-39]. Movant also confirmed that he agreed to the Government's recommended 240-month sentence. [*Id.* at 69]. Movant swore there were no additional promises or assurances outside of what is contained in the plea agreement. [*Id.* at 71]. When asked if anybody had pressured, threatened, or induced him to enter a guilty plea, Movant confirmed his guilty plea was freely and voluntarily entered into. [*Id.*].

Additionally, Movant agreed that he read the factual proffer with Counsel's assistance, reviewing every sentence within it with Counsel, and that it was his signature on the factual proffer. [*Id.* at 20]. He further confirmed that the statements within the factual proffer are true and correct. [*Id.*]. Later, after the factual proffer was read in its entirety, Movant admitted that he said and committed the acts detailed. [*Id.* at 71-80].

The Court entered a sentence of 20 years' imprisonment and 10 years' supervisory release. [CR ECF No. 421]. Movant appealed [CR ECF No. 507], but the appeal was dismissed for want of prosecution. [CR ECF No. 527].

D. Pertinent Factual Information

Even though the entirety of the Factual Proffer associated with Movant's guilty plea is pertinent because he pled guilty to a conspiracy, the portions explicitly detailing his involvement in the conspiracy provide as follows:

> In or around January 2015, the DEA in West Palm Beach joined an ongoing Palm Beach County Sheriff's Office investigation targeting a drug trafficking organization involving co-defendants Wilfredo Pagan and Rogelio Rosales. Pagan, Rosales, and various associates including the defendant regularly sold heroin and/or crack cocaine in 2014 and 2015. During that time, the defendant and his co-conspirators obtained kilogram quantities of heroin from co-defendant Steven Herrera's supplier in Atlanta and resold it in South Florida.

> For example, on or about October 15, 2014, Pagan Herrera, Rosales, and the defendant traveled to the Atlanta, Georgia area to purchase one kilogram of heroin from Herrera's supplier for resale in south Florida. Rosales agreed that he would front approximately $60,000 to pay for the heroin. Upon their return to South Florida, Pagan, Herrera, and Rosales would share the heroin for their own individual resale. While in Georgia, Pagan, and Herrera purchased one-half kilogram of heroin from Herrera's supplier. Shortly thereafter, Pagan and the others added cut to the half kilogram of heroin to make it weigh approximately one kilogram. They then packaged the heroin in vacuum-sealed bags and concealed its scent by using mustard and coffee. After it was packaged, Pagan and the others concealed the heroin in a duffle bag.

> Before returning [to] south Florida, Herrera rented a second vehicle for the defendant to use to transport the heroin back to West Palm Beach. Pagan, Rosales, and Herrera rode back in the other vehicle and transported the approximately $31,243 unused money from the heroin purchase. ln route to South Florida, law enforcement stopped the defendant's vehicle but did not detect the presence of the heroin. Shortly thereafter, all four men met up and switched vehicles. Pagan transported the heroin in one vehicle. Herrera, Rosales, and the Defendant transported the money in the other. Sometime thereafter, law enforcement stopped Herrera, Rosales, and the defendant and seized approximately $31,243, and other monies located on their persons and in the vehicle. Pagan transported the heroin successfully back to West Palm Beach. In West Palm Beach, Pagan, Rosales, Herrera, [and] the defendant met up and divided the heroin among them.

In November 2014, the defendant engaged in drug distribution activities in Palm Beach County. For example, on November 21, 2014, the defendant was driving a 2003 Honda Accord when the police stopped him for a traffic infraction. During the stop, the officer seized heroin, cocaine, and marijuana located inside the center console. The defendant possessed these controlled substances with the intent to sell them. The officer also seized a loaded firearm located inside the driver's side door. The defendant was aware of the presence of the firearm at the time of the seizure.

In November or December 2014, Herrera and Rosales returned to Atlanta to acquire more heroin for resale in south Florida. The arrangement was similar to the first trip. Rosales agreed to front the money and Herrera agreed to purchase the heroin from his supplier. While in Atlanta, Herrera and Rosales purchased one kilogram of heroin from Herrera's supplier. Sometime thereafter, Herrera and Rosales successfully transported the heroin back to Florida. After Herrera returned to his residence in the Orlando area, Rosales brought the heroin to Pagan's residence in Palm Beach County. Rosales and the defendant then divided-up their portions of the heroin.

In February 2015, Pagan, Herrera, Rosales, and the defendant traveled again to the Atlanta area to acquire an additional kilogram of heroin from Herrera's supplier. Once again, Rosales agreed to front more than $50,000 to purchase the heroin. Pagan, Herrera, and the defendant drove up together. Initially, Rosales decided not to make the trip. While driving through Lowndes County, Georgia, Pagan, Herrera, and the defendant were stopped by police. During the stop, the police seized $52,091 and "weed gummies" from the vehicle. The police arrested Pagan after he admitted ownership of the money and the gummies.

*\*\**

On June 2, 2015, a confidential informant working with the DEA placed a recorded phone call to a phone number believed to be used by co-defendant Scott Jenkins. The defendant answered the call. During the call, the defendant agreed to sell $40 worth of heroin. Shortly thereafter, the defendant met with the informant in the parking lot of a McDonald's restaurant in West Palm Beach. During the meeting, the defendant sold $40 worth of heroin to the informant.

*\*\**

[O]n July 4, 201[5], Pagan instructed the defendant in a coded telephone conversation to deliver $3,000 to co-defendant Rafael Tineo so that Tineo could purchase one ounce of heroin from their heroin supplier. On July 7, 2015, surveillance agents observed the defendant and Pagan riding in the defendant's black BMW. During the surveillance, the defendant and Pagan suspected that the police were following them. To avoid detection, the defendant and Pagan discarded in a dumpster a duffle bag that contained cocaine, heroin, packaging material, a cutting agent, a digital scale, and a firearm. Shortly thereafter, the police located and seized the duffle bag and its contents. The defendant returned [to] the dumpster in an effort to locate the bag. He immediately reported to Pagan that the bag was gone.

On October 27, 2015, agents arrested the defendant and Pagan at their residence in West Palm Beach. A search of that residence revealed an assortment of cocaine, heroin, marijuana, packaging materials[,] and firearms.

Throughout the time frame of the charged conspiracy, the defendant conspired with Pagan, Rosales, and Herrera, and others to distribute at least three kilograms of heroin but less than 10 kilograms of heroin.

[CR ECF No. 347].

### IV. Standard of Review

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See id.*; *see also McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations and internal quotations omitted). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## V. Discussion

A. <u>Generally Applicable Substantive Law: Ineffective Assistance</u>

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See id.* at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *See Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir.

10

2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *See Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Id.* at 687.

### B. Ground One

In Ground One, Movant claims Counsel was ineffective for failing to object to judicial interference during plea negotiations. [ECF No. 8 at 4]. According to Movant, he was forced into pleading guilty to avoid a trial because Counsel failed to object to the Court's "interference" when it said it would begin trial proceedings if Movant did not plead guilty. [*Id.*]. Movant also claims within Ground One that Counsel told him he was not ready for trial further influencing his decision to enter a guilty plea. [*Id.*].

Movant's claim must be denied. During his plea colloquy, Movant never indicated that he felt pressured into entering a guilty plea. To the contrary, he explicitly agreed that he felt no pressure in doing so. Thus, Movant's allegations in Ground One are inconsistent with his colloquy statements.

Statements made during a plea colloquy carry a strong presumption of verity. *See Stillwell v. United States*, 709 F. App'x 585, 590 (11th Cir. 2017); *see also United States v. Nelson*, 442 F. App'x 496, 497 (11th Cir. 2011). Further, Movant is subject to a heightened pleading standard in this proceeding. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011) ("The § 2254 Rules and the § 2255 Rules mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a)."). Because Movant does not provide any explanation for why his allegations are more reliable now than his presumptively true colloquy statements, where he affirmed feeling no pressure when entering his guilty plea, he fails to meet his burden at

11

providing non-conclusory allegations to show he would have insisted on going to trial. Thus, he has failed to show *Strickland* prejudice. *See Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) (explaining there must be a reasonable probability that, but for counsel's errors, the defendant would have insisted on going to trial instead of pleading guilty).

Moreover, the Amended Motion does not contain specific allegations indicating that Movant would have insisted on going to trial but for the challenged error. As such, all claims that may have been raised within Ground One are facially deficient in showing *Strickland* prejudice. *See id.* at 59-60 (explaining a conclusory allegation of prejudice is not sufficient); *see also United States v. Rivers*, 656 F. App'x 444, 449-50 (11th Cir. 2016) (same).

C. Ground Two

In Ground Two, Movant contends Counsel was ineffective for permitting the prosecutor to coerce Movant's guilty plea. [ECF No. 8 at 5-6]. Movant alleges the prosecutor threatened to file a § 851 enhancement if he filed motions to suppress thereby influencing his guilty plea. [*Id.*].

Movant's claim is belied by the record and is also facially deficient. To begin, he filed several motions to suppress. [CR ECF Nos. 245, 247, 248, 249]. Thus, even if there had been any prosecutorial "threats," they certainly did not deter Movant in filing motions to suppress.

The Government filed its § 851 Notice prior to Movant's guilty plea. [CR ECF No. 279]. And, according to Movant's Plea Agreement, he agreed that his guilty plea carried a mandatory minimum sentence of 20 years' imprisonment in light of 21 U.S.C. § 851. [CR ECF No. 346 at 2]. During his colloquy, Movant affirmed that he understood by signing the Plea Agreement the Court could impose a sentence of 20 years' imprisonment and as high as life imprisonment. [ECF No. 16-2 at 36, 38-39]. Movant also stated that he was not pressured, threatened, or induced into entering his guilty plea. [*Id.* at 71].

As such, Movant's new allegations, claiming he was pressured or threatened to enter a guilty plea, fail to rebut the presumption of truth afforded to his colloquy statements. *See Stillwell*, 709 F. App'x at 590. After all, Movant bargained for a sentence that considered the § 851 enhancement when he pled guilty and acknowledged that he was facing a minimum of 20 years' imprisonment because of that enhancement. Even without the enhancement, as shall be explained later in this Report, Movant avoided the risk of a more onerous sentence by having all other charges dismissed if he agreed to make a joint recommendation of 20 years' imprisonment as to Count 1. Viewed together, as Movant cannot prove he was pressured into pleading guilty or into making a joint recommendation of 20 years' imprisonment, he lacks a factual predicate to support his *Strickland* claim.

Lastly, like Ground One, Movant has not provided sufficient allegations showing he would have insisted on going to trial but for Counsel's failure to object to the Government's alleged threats. As such, he failed to establish *Strickland* prejudice. *See Rivers*, 656 F. App'x at 449-50.

D. <u>Ground Three</u>

Movant, as Ground Three, claims Counsel was ineffective for failing to challenge the contents of the Factual Proffer. [ECF No. 8 at 7]. Counsel's failure to do so allegedly caused Movant to endure a more onerous sentence. [*Id.*]. Liberally construed, Movant submits paragraphs 1, 2, 3, 5, 6, 7, and 12 of the Factual Proffer are untrue, conflict with the factual proffers of his codefendants, or should not be trusted because the source of that information came from his codefendants. [*Id.*].

During his colloquy, Movant affirmed under oath that the Factual Proffer was true and correct. [ECF No. 16-2 at 71-80]. Movant agreed that he read the Factual Proffer with Counsel's assistance, reviewing every sentence within it with Counsel, and confirmed that it was his signature

on the Factual Proffer. [*Id.* at 20]. Movant's colloquy statements, of course, are presumptively true. *See Stillwell*, 709 F. App'x at 590. Thus, Movant has failed to meet his burden in showing Counsel was deficient for not objecting to factual issues he agreed were not present. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Movant also cannot show prejudice. When entering his guilty plea, Movant understood that he and the Government would jointly recommend 20 years' imprisonment. [ECF No. 16-2 at 69]. Movant has not explained why a less onerous sentence would have been imposed below the applicable mandatory minimum sentence that he conceded applied. As Movant is subject to a heightened pleading standard, *see Borden*, 646 F.3d at 810, Movant has not met his burden in pleading a reasonable probability of a more favorable outcome at sentencing. *See Strickland*, 466 U.S. at 694. To the extent this is a guilt phase challenge, he did not allege that he would have insisted on going to trial but for Counsel's challenged conduct, meaning *Strickland* prejudice has not been met on such a claim. *See Hill*, 474 U.S. at 57-59.

E. <u>Ground Four</u>

Ground Four contains a number of subclaims. Each are exceptionally conclusory. Even so, the Undersigned will endeavor to address all subclaims.[5] Though it may be contrived, it appears the subclaims fit into three rough categories.

*i. Failure to Rely on Certain Guidelines Provisions*

The first set of subclaims contend Counsel should have relied on the Guidelines Manual Appendix C Amendment 439 subsection (c)(6) and (c)(7) to assert the drug quantity attributable

---

[5] To the extent Movant might later assert a subclaim was not addressed, it was too vague and conclusory to prove *Strickland* prejudice and, therefore, are not entitled to relief.

to Movant was inaccurate. [ECF No. 8 at 9]. Liberally construed, Counsel's failure to rely on these provisions reportedly resulted in a more onerous sentence. [*Id.*].

Setting aside whether those provisions would have even applied, Movant cannot show prejudice. In exchange for Movant's guilty plea to Count 1, he agreed to jointly recommend a 20-year sentence in order to have all other charges dismissed. Movant received the bargained for sentence. And, as previously indicated, convictions on some of the dismissed charges (*i.e.*, Counts 3 and 10) would have resulted in a mandatory minimum sentence more onerous than the 20-year sentence that was imposed. Because Movant received a sentence he bargained for, and he does not indicate that he would have refused his Plea Agreement and insisted on going to trial in hopes of obtaining a more lenient sentence, he cannot prove a reasonable probability of a more favorable outcome. *See Hill*, 474 U.S. at 57-59 (requiring a party to prove a reasonable probability that he would have insisted on going to trial); *see also Strickland*, 466 U.S. at 694 (defining prejudice). Further, because Counsel acted in accordance with that favorable plea agreement, in which Movant conceded the drug quantity at issue, Movant cannot show Counsel acted deficiently. *See Chandler*, 218 F.3d at 1315.

### ii. Failing to Cite a "Buyer/Seller Defense" or to Obtain an Affidavit

The second set of subclaims assert a "buyer/seller defense" should have been relied upon because Movant purchased a smaller quantity of drugs from his codefendant and that an affidavit from Codefendant Pagan would have shown Movant had no involvement in the conspiracy. [ECF No. 8 at 9].

First, Movant's conclusory allegations that Codefendant Pagan would have attested to Movant having no role in the conspiracy is conclusory. In fact, those allegations not only contradict Movant's plea colloquy statements but also the colloquy statements of Codefendant Pagan. [CR

ECF No. 16-2 at 52-58, 73-80]. Because Movant fails to provide any allegations clarifying why his new allegations are more reliable than his presumptively true colloquy statements, this claim lacks a factual predicate. And, therefore, Movant cannot show *Strickland* prejudice. *See Strickland*, 466 U.S. at 694

Second, Movant stated at his plea colloquy that he discussed all available defenses before deciding to plead guilty. [ECF No. 16-2 at 19-20]. Movant's bare allegations fail to refute the presumptively true statements that he made during his colloquy. More critically, Movant failed to allege that he would have insisted on going to trial and refused the plea agreement had he been advised of the possibility of raising a buyer/seller defense, demonstrating that he failed to plead *Strickland* prejudice. *See Rivers*, 656 F. App'x at 449-50 The Court need not address the performance prong. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1100 (11th Cir. 2007).

### iii. Failing to Challenge the Heroin, Crack-Cocaine, or Cocaine Quantity

The third set of subclaims contend Counsel failed to challenge the quantity of heroin alleged in the superseding indictment, the quantity of crack-cocaine in the superseding indictment, and the lack of a specific quantity of cocaine to support the conspiracy charge within the superseding indictment. [*Id.* at 10].

To the extent this claim challenges Counsel's effectiveness as it relates to the voluntariness of Movant's guilty plea, Movant makes no indication that he would have insisted on going to trial but for Counsel's errors. Because these subclaims are subject to a heightened pleading standard, *see Borden*, 646 F.3d at 810, Movant did not meet his burden at showing *Strickland* prejudice. *See Rivers*, 656 F. App'x at 449-50.

Likewise, to the extent Movant intended to argue that the challenged conduct resulted in a more onerous sentence, Movant agreed to jointly recommend a 20-year sentence on Count 1 in

order to avoid being convicted on all other counts. As Movant received the bargained for sentence, and the mandatory minimum sentences on some of the dismissed charges (*i.e.*, Counts 3 and 10) alone would have been more onerous than the sentence actually imposed, Movant fails to prove a reasonable probability of a more favorable outcome. *See Strickland*, 466 U.S. at 694.

F. Ground Five

As to Ground Five, Movant claims he received ineffective assistance because Counsel failed to sever his case from his codefendants. [ECF No. 8 at 13]. Movant asserts that, but for Counsel's conduct, he could not present exculpatory evidence or evidence that would have adversely affected his codefendants. [*Id.*]. But Movant fails to detail what evidence he would have presented had he proceeded to trial or had his case been severed from his codefendants. As this claim is too vague and conclusory to show *Strickland* prejudice, *see Rivers*, 656 F. App'x at 449-50, this claim should be denied. The Court need not address the performance prong. *See Dingle*, 480 F.3d at 1100.

G. Ground Six

*i. First set of Subclaims—Challenging the Factual Proffer*

Movant raises a number of subclaims within Ground Six. [ECF No. 8 at 13]. The first set of subclaims essentially assert that his Presentence Investigation Report ("PSI") contained inaccuracies, specifically that the weight of the heroin at issue was inaccurate and that the PSI relied on "[p]atently false 'facts' of the investigation derived from the Government's factual proffer." [*Id.*]. Movant contends he told his counsel to object to these inaccuracies in the PSI. [*Id.*]. But for Counsel's failure to object, according to Movant, he would have received a more favorable sentence. [*Id.*].

This claim lacks merit. During his plea colloquy, Movant confirmed that he read the Factual Proffer and affirmed its accuracy. [ECF No. 16-2 at 20]. The PSI's articulation of the offense conduct substantially mirrors the Factual Proffer in all relevant respects. As the Court must accept Movant's colloquy statements as unrebutted evidence, Movant's Counsel cannot perform deficiently for failing to challenge factual information that his client has insisted is accurate. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Movant also cannot show *Strickland* prejudice. Again, Movant agreed to jointly recommend a 20-year sentence and conceded the drug quantity at issue (*i.e.*, at least three kilograms of heroin) as to Count 1 to obtain dismissal of the remaining charges. Further, as already stated, the PSI's description of the offense conduct substantially mirrors the Factual Proffer. [PSI ¶¶ 8-75]. Like many of Movant's other claims, he provides no allegations indicating he would have rejected the Plea Agreement in order to challenge the drug quantity attributable to him. Similarly, Movant's generalized allegations that the PSI was inaccurate because it relied on the "patently false" Factual Proffer fails to include any assertion that Movant would have rejected the Plea Agreement. Movant, therefore, fails to prove *Strickland* prejudice. *See Hill*, 474 U.S. at 57-59 (requiring a party to prove a reasonable probability that he would have insisted on going to trial); *see also Strickland*, 466 U.S. at 694 (defining prejudice).

*ii. Second Set of Subclaims—Acceptance of Responsibility*

In a second set of subclaims, Movant contends Counsel was ineffective for not being present during the PSI interview. [ECF No. 8 at 13]. According to Movant, by not having Counsel present, he was forced into making a statement accepting responsibility. [*Id.*]. Even assuming

Movant had a right to Counsel during a PSI interview,[6] Movant does not assert that he would have insisted on going to trial or that he would have never accepted responsibility had Counsel been present. As such, even if there was a constitutional right to counsel during a presentence interview, he would have failed to meet his burden at showing *Strickland* prejudice. *See Rivers*, 656 F. App'x at 449-50.

### iii. Third Set of Subclaims—Reductions, Enhancements, and Criminal History

In a third set of subclaims, Movant contends Counsel should have argued that Movant qualified for a mitigating role sentencing reduction, a two-point gun enhancement should have been challenged, and a misdemeanor marijuana conviction should have been contested. [ECF No. 8 at 13].

Again, pursuant to his Plea Agreement, Movant agreed to recommend a 20-year sentence. He bargained for these terms to avoid prosecution on all other counts. Because Movant does not indicate that he would have rejected that Plea Agreement to proceed to trial against the remaining charges, which would have subjected him to a much harsher sentence as previously mentioned, Movant has not adequately shown *Strickland* prejudice. *See Strickland*, 466 U.S. at 694.

### iv. Fourth Set of Subclaims—Challenging the Mandatory Minimum Sentence

Finally, in his last set of subclaims for Ground Six, Movant claims Counsel should have (a) objected to the harshness of having a mandatory minimum sentence imposed; (b) challenged whether the mandatory minimum sentence should have applied; (c) argued that the § 851

---

[6] Whether a defendant has a right to counsel during a presentence interview remains an open question in this circuit, but the Eleventh Circuit has noted that other circuits have rejected this argument on the basis that "a presentence interview by a probation officer is not a critical stage of the criminal proceedings at which the Sixth Amendment ensures representation." *See United States v. Simpson*, 904 F.2d 607, 611 (11th Cir. 1990) (collecting cases); *see also United States v. Hooks*, 147 F. App'x 956, 958-59 (11th Cir. 2005). District courts within this circuit have similarly recognized that "the vast majority" of courts to confront the issue have declined to find a right to counsel has been violated, "especially if the probation office has taken no action to exclude counsel." *See, e.g.*, *Williams v. United States*, No. CV508-034, 2009 WL 2486914, at *1 n.1 (S.D. Ga. Aug. 10, 2009) (collecting cases).

enhancement was too vague to apply; and (d) rebutted the Government's argument that the § 851 enhancement applied.

Again, pursuant to his Plea Agreement, Movant conceded to jointly recommend a sentence of 20 year's imprisonment to plead guilty to Count 1. [CR ECF No. 346 at 2]. In exchange, Movant had all other counts dismissed. [*Id.* at 1]. By doing so, with or without the § 851 enhancement attached to Count 1, the 20-year sentence that was imposed was less harsh than the sentence the Court would have been required to impose had Movant proceeded to trial only to be convicted on all counts. After all, Count 3 had a mandatory minimum sentence of 5 years' imprisonment to be served consecutive to any other sentence imposed. [CR ECF No. 147]. And Count 10 had a mandatory minimum sentence of 25 years' imprisonment to be served consecutive to any other sentence imposed. [*Id.*]. In total, had Movant been convicted on those counts alone, the best possible sentence he could have received was a total sentence of 30 years' imprisonment.

Movant has not alleged that he would have rejected the Plea Agreement and faced the risk of a more onerous sentence just to argue that the § 851 enhancement did not apply. Movant, as already stated, is subject to a heightened pleading standard. By failing to provide allegations showing that he would have insisted on going to trial only to later argue the § 851 enhancement did not apply, he has not adequately pled *Strickland* prejudice. *See Hill*, 474 U.S. at 57-59 (requiring a party to prove a reasonable probability that he would have insisted on going to trial); *see also Strickland*, 466 U.S. at 694. The Court need not address the performance prong. *See Dingle*, 480 F.3d at 1100.

H. <u>Ground Seven</u>

As for Ground Seven, Movant again claims Counsel was ineffective for not challenging the § 851 enhancement during plea negotiations and prior to sentencing. [ECF No. 8 at 14]. To

the extent Movant asserts this affected his decision to enter a guilty plea, he fails to provide any allegations indicating he would have insisted on going to trial, meaning he fails to adequately plead *Strickland* prejudice. *See Rivers*, 656 F. App'x at 449-50. And, to the extent Movant claims Counsel's failure resulted in a more onerous sentence, this claim was already raised as his last sub-claim in Ground Six. Accordingly, this claim should be denied.

I. Ground Eight

In Ground Eight, Movant contends Counsel was ineffective (a) for not filing an adequate motion to suppress and then (b) for not filing an interlocutory appeal on the denial of the motions to suppress. [ECF No. 8 at 14]. Movant failed to explicitly allege that he would have insisted on going to trial had any of the motions to suppress been granted. Without allegations to that effect, he has not adequately pled *Strickland* prejudice as to his claim that Counsel failed to file an adequate motion to suppress. *See Rivers*, 656 F. App'x at 449-50.

Further, Movant's assertion that his counsel should have filed an interlocutory appeal lacks merit because the denial of a motion to suppress cannot be appealed before final judgment. Pursuant to 28 U.S.C. § 1291, courts of appeals have jurisdiction over "all final decisions" of district courts except when direct review "may be had in the Supreme Court." As it is well-settled that a district court's denial of a motion to suppress is a non-final order that cannot be appealed before final judgment, *see United States v. Kirk,* 781 F.2d 1498, 1501 n.2 (11th Cir. 1986), any attempt by Counsel to pursue an interlocutory appeal would have been dismissed. *See United States v. Snipes*, 512 F.3d 1301, 1302 (11th Cir. 2008).

Accordingly, Counsel was not ineffective for failing to raise a procedurally futile appeal. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (holding that counsel could not be ineffective under *Strickland* for failing to raise a futile issue on appeal).

21

J. Ground Nine

Turning to Ground Nine, Movant claims Counsel failed to file additional motions to suppress on a variety of issues. [ECF No. 8 at 15]. Like many of Movant's claims, he does not explicitly assert that he would have insisted on going to trial but for Counsel's alleged failures. Although Movant asserts Counsel's conduct "greatly diminished his preferred option of a trial" [ECF No. 8 at 15], this conclusory remark is insufficient to prove he would have actually insisted on going to trial.[7] *See Hill*, 474 U.S. at 59-60. Thus, *Strickland* prejudice has not been met. *See id.* This claim should, therefore, be denied. The Court need not address the performance prong. *See Dingle*, 480 F.3d at 1100.

K. Ground Ten

With respect to Ground Ten, Movant contends Counsel was ineffective for failing to request an evidentiary hearing regarding the drug quantity, which allegedly resulted in a more onerous sentence. [ECF No. 8 at 15-16]. Although Movant acknowledges that the Factual Proffer asserted that he was responsible for 3-10 kilograms of heroin [*id.*], he asserts the Factual Proffer was "riddled with inconsistencies" because 600 grams of heroin was recovered from Movant's codefendants. [*Id.* at 16].

Yet again, in exchange for his guilty plea admitting that the drug quantity exceeded 3 kilograms of heroin in support of Count 1, which came with Movant's joint recommendation that a 20-year mandatory minimum sentence should be entered, Movant avoided convictions on eight other counts. [CR ECF No. 346]. Had Movant been convicted on Count 3, it would have carried a mandatory minimum sentence of 5 years' imprisonment consecutive to any other sentence

---

[7] While Movant asserts that the proposed motions to suppress would have resulted in three to four counts being "dismissed" [ECF No. 8 at 15], he has not clarified whether he would have gone to trial to face the other five to six counts against him. *See Borden*, 646 F.3d at 810.

imposed. [CR ECF No. 147]. Count 10 similarly carried a mandatory minimum sentence of 25 years to be served consecutive to any other sentence imposed. [*Id.*].

Movant has made no allegations indicating he would have faced the risks associated with proceeding to trial (*i.e.*, at least two counts with consecutive mandatory minimum sentences totaling 30 years' imprisonment). As such, Movant's conclusory allegations fail to satisfy *Strickland* prejudice. *See Hill*, 474 U.S. at 59-60. The Court need not address the performance prong, as this claim should be denied. *See Dingle*, 480 F.3d at 1100.

L. Ground Eleven

At last, in Ground Eleven, Movant contends Counsel was ineffective for failing to investigate and seek evidence in support of Movant's innocence. [ECF No. 8 at 16]. Movant asserts he asked his attorneys to obtain GPS data for his cell phone, which would disprove "certain allegations," such as "inferences of ownership and use of cellphones" falsely attributed to him. [*Id.*]. Movant further claims that Codefendant Pagan would "exonerate" him by providing a statement attesting that Movant was not involved in the conspiracy. [*Id.*]. Lastly, Movant claims DNA evidence should have been analyzed and expert witnesses should have explained its significance. [*Id.*]. In this claim, Movant contends he would have rejected the Plea Agreement recommending 20 years' imprisonment had his attorneys done as he asked. [*Id.*].[8]

---

[8] In what may have been a subclaim, Movant asserted that he would have benefitted from the First Step Act of 2018 had Counsel advised him to proceed to trial because a trial would have delayed the proceedings thereby rendering his sentence subject to the Act. [ECF No. 8 at 16]. Counsel's performance is measured against the circumstances that existed at the time of the challenged conduct. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). After multiple rescheduled trial dates, even after a new attorney was appointed in July 2017, Movant's final trial date was set for October 10, 2017. [CR ECF Nos. 292, 311]. Movant pled guilty in October 2017. [CR ECF Nos. 343, 346, 347]. The First Step Act of 2018, enacted in December 2018, predates Movant's guilty plea by over one year. Consequently, even assuming the First Step Act of 2018 would have reduced Movant's exposure at sentencing, Movant's attorneys could not be faulted for failing to predict changes in the law and advising Movant to plead guilty to avoid a more onerous sentence based on existing law. *See, e.g.*, *Jones v. United States*, 224 F.3d 1251, 1257-58 (11th Cir.2000); *Giddens v. United States*, 579 F. App'x 959, 960 (11th Cir. 2014).

This claim must be denied. Movant's allegations of disproving "certain allegations" with GPS data and asking for DNA evidence is too vague and conclusory to meet the applicable heightened pleading standard in this proceeding. *See Borden*, 646 F.3d at 810.

Additionally, while Movant alleges Codefendant Pagan would have attested to Movant having no involvement in the conspiracy, both Movant and Codefendant Pagan swore to the contrary when they pled guilty. Their colloquy statements are entitled to a presumption of verity. *See Nelson*, 442 F. App'x at 497. Further, Movant has not provided the Court with an affidavit from Codefendant Pagan. Viewed together, Movant's vague allegations are insufficient to rebut the presumption of truth afforded to his colloquy statements. Even if one had been provided, Movant's allegations that such a statement would have "exonerated" him is bare and conclusory. Because Movant provides no reliable evidence of his innocence in this proceeding, he fails to meet his burden at demonstrating beyond conclusory allegations that he would have insisted on proceeding to trial. *See Hill*, 474 U.S. at 57-59; *Strickland*, 466 U.S. at 694. The Court need not address whether Counsel's performance was reasonable. *See Dingle*, 480 F.3d at 1100.

M. <u>Movant's Reply</u>

Unique to this case, final notes are necessary. Overall, Movant's Reply [ECF No. 19] demonstrates that he has overvalued the significance of his own conclusory allegations against the weight of his presumptively true colloquy statements. Movant's attempts at supplying new allegations within his Reply, of course, cannot be considered, especially because his new or supplementary allegations are not sworn under penalty of perjury. Consequently, all allegations contained within his Reply are not properly before the Court. *See* Rs. 2(b) and 5(d) of the Rules Governing Section 2255 Cases (explaining allegations must "specify all the grounds for relief,"

"state the facts supporting each ground," and "be signed under penalty of perjury" and showing a reply is only a response to a responding party's answer).

Movant's Reply also illustrates that Movant misunderstands how courts function. To be exact, the mere fact that the Court set a final deadline for Movant to accept a guilty plea has little to no significance without context. And here, Movant had ample time to negotiate with the Government. *Compare* [CR ECF No. 27] (showing Movant's arrest was executed on October 27, 2015), *with* [CR ECF Nos. 335, 346, 347] (entering a guilty plea on October 11, 2017)].

As detailed within this Report, Movant's trial was rescheduled on multiple occasions to accommodate him, his various filings, and his codefendants. *Compare* [CR ECF No. 58] (setting trial for January 4, 2016), *with* [CR ECF No. 133] (resetting jury trial for March 7, 2016) *and* [CR ECF No. 149] (resetting for April 4, 2016) *and* [CR ECF No. 195] (resetting for October 11, 2016) *and* [CR ECF No. 236] (resetting for January 3, 2017) *and* [CR ECF No. 251] (resetting for March 6, 2017) *and* [CR ECF No. 265] (resetting for April 3, 2017) *and* [CR ECF No. 292] (resetting for October 10, 2017).

So, while Movant claims the Court threatened him with a trial that would commence within 24 hours, that trial had been scheduled, re-scheduled, and re-scheduled again. In fact, the order setting Movant's trial for October 2017—the month Movant pled guilty—was entered six months prior. [CR ECF Nos. 292, 343, 346, 347]. As such, Movant cannot claim that he lacked notice of his imminent trial date nor suggest that he had little time to consider whether to plead guilty.

Naturally, there comes a time where delays must end. And for the Court, it clearly marked that point. [CR ECF No. 311] (substituting counsel of record but noting substituted counsel must be prepared to represent movant at a trial scheduled three months later). Prior to having another attorney to substitute initial Counsel, Movant was notified that having another attorney substituted

as counsel of record might mean a new attorney would have less time to prepare for his case. [ECF No. 16-2 at 5]. Movant was also warned, that his insistence to file motions to suppress may result in the Government filing a § 851 notice enhancing his sentence. [ECF No. 16-3 at 53-55, 61]. Movant's initial Counsel, as demonstrated by hearing transcripts, viewed the risk of a § 851 notice to be "a major concern" if Movant were to proceed with filing a motion to suppress. [*Id.* at 48]. Despite those concerns, and his initial Counsel's advice, Movant stated to the Court that it was a risk worth taking. [*Id.* at 55, 61].

Even without the § 851 enhancement, as repeatedly mentioned throughout this Report, a more onerous sentence would have been required if Movant had been convicted on all counts. Sure, Movant claims within his Reply that he would have asked to proceed to trial. But he never alleged that he would have gone to trial with all charges against him and with the § 851 notice pending. *See Borden*, 646 F.3d at 810. Instead, Movant simply asserts the threat of a § 851 enhancement was a "a hammer over [his] head" and the Government filed it "to punish" him. [ECF No. 19 at 8-9]. Whether it was the § 851 notice, the imminent trial date, or both which caused Movant to reevaluate his plea options and sentencing exposure, criminal proceedings are rooted in tough decisions. Movant's decision certainly does not make his guilty plea involuntary. In sum, for the reasons previously stated, all claims should be denied.

## VI. Evidentiary Hearing

Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015). However, district courts "need not hold a hearing if the allegations are 'patently frivolous,' based upon 'unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Id.* at 1263 (citing *Winthrop-Redin*

*v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)); *cf. Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing in a § 2254 context). Here, an evidentiary hearing is not warranted.

### VII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his motion to vacate has no absolute entitlement to appeal and must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). The Court should issue a COA only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a COA, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001). In this case, there is no basis to issue a certificate of appealability. If Movant disagrees, he may argue this in his objections to this Report to the District Judge.

### VIII. Conclusion

Based on the above, it is recommended that the Amended Motion to Vacate [ECF No. 8] be **DENIED**. In addition, an evidentiary hearing should be **DENIED**, this Court should **NOT ISSUE** a certificate of appealability, and this case should be **CLOSED**.

Objections to this Report may be filed with the District Judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal

conclusions." *See* 11th Cir. R. 3-1 (2016); *see also* 28 U.S.C. § 636(b)(1)(C); *Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

Signed this 19th day of January, 2021.

UNITED STATES MAGISTRATE JUDGE

cc:    Pedro Antonio Alarcon
08683-104
Miami Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 779800
Miami, FL 33177
PRO SE

Mark Dispoto
United States Attorney's Office
500 E Broward Boulevard, 7th Floor
Fort Lauderdale, FL 33301-3002
Email: mark.dispoto@usdoj.gov